250 S.E.2d 777 (1978)
Beverly Ann McCARTNEY et al.
v.
John T. COBERLY et al.
No. 14042.
Supreme Court of Appeals of West Virginia.
March 14, 1978.
Rehearing Denied May 22, 1978.
*778 Talbott & Alsop, William W. Talbott, Webster Springs, for plaintiff in error.
James A. Kent, Jr., Elkins, for defendants in error.
MILLER, Justice:
Beverly Ann McCartney appeals the dismissal of her suit, in which she sought to regain custody of her infant daughter from John and Rebecca Coberly. The trial court viewed the written custody agreement entered into between Mrs. McCartney and the Coberlys as vesting permanent custody in the Coberlys. It then ruled that Mrs. McCartney was required, but failed, to show a change in circumstances sufficient to warrant regaining custody of her child. We reverse.
Custody was transferred by a written custody agreement, pertinent portions of which we set out in the margin.[1] This agreement was prepared by the Coberlys' attorney and Mrs. McCartney signed the agreement on March 6, 1975. At the same time several other documents were also signed, including a "consent to permit adoption", an affidavit waiving notice of any adoption proceeding and relinquishing custody to the Coberlys. This affidavit provided, however, that relinquishment of custody would be void if the infant were found not to be "of sound body and mind."
Testimony at the hearing reveals that within a week after Mrs. McCartney executed these agreements and turned over custody of the infant child to the Coberlys, she changed her mind and requested that the child be returned to her. When the Coberlys refused, the suit was brought.[2]
The trial court found that appellant had, by executing all of the written instruments, intended to vest permanent custody of her child with the Coberlys. The court then reasoned that as appellant had granted permanent custody of her child to the Coberlys she was required to show a change in her circumstances sufficient to warrant regaining custody of the child. The trial court concluded that Mrs. McCartney had failed to show a change in circumstances, that the Coberlys were fit custodians, and awarded custody of the child to them.
*779 The pivotal issue in this case is whether Beverly McCartney transferred custody of her child to the Coberlys temporarily or permanently. This issue must be answered by construction of the written custody agreement. It is clear from this agreement that Mrs. McCartney, the natural mother, had the right to demand the return of her child. Moreover, the Coberlys also had "the right to return the child at any time during the probationary period." Manifestly, the custody agreement did not contemplate vesting permanent custody in the Coberlys during the "probationary period of six (6) months."
Furthermore, the Coberlys were not required to adopt the child upon the expiration of the probationary period. Rather, the Coberlys reserved the option to adopt the child only if "they agree that such is in the best interest of all the parties." At best, the custody agreement provided only that the Coberlys could begin adoption proceedings within sixty days after the expiration of the probationary period, if the probationary period were successfully completed without the parties changing their minds.
In Whiteman v. Robinson, 145 W.Va. 685, 116 S.E.2d 691 (1960), this Court, without dissent, recognized that "temporary custody [of a child] to a third person is not tantamount to a divestiture of the right of the parent to the custody of his or her child." The Court further stated that where the transfer of custody to a third party is merely temporary, the natural parent may reclaim custody of his or her child without showing "that such change of custody will materially promote the moral and physical welfare of the child." 145 W.Va. at 693, 116 S.E.2d at 695. This rule accords full force and effect to a parent's natural right to the custody of his or her infant childa right which is superior to that of a third party who has been given only temporary custody. See Hammack v. Wise, W.Va., 211 S.E.2d 118 (1975).
The trial court erred in holding that Beverly McCartney intended to transfer permanent custody of her child to the Coberlys on March 6, 1975. As a result, the trial court then required the mother to show that a change in custody of the child from the Coberlys to her would materially promote the moral and physical welfare of the child. This burden, as previously noted, is not imposed on a natural parent who is found to have delivered temporary custody of her child to a third party.
The Coberlys claim that the consent to adoption form signed by Beverly McCartney is, under W.Va.Code, 48-4-1a, irrevocable.[3] There would be merit in this position had Mrs. McCartney only executed an irrevocable consent to the adoption of her child by the Coberlys. The record, however, reveals that the consent to adopt form was signed along with the written custody agreement and other documents, all of which clearly indicate that Mrs. McCartney did not intend to relinquish permanent custody of her child during the six-month probationary period. The law is settled that separate written instruments will be construed together and considered to constitute one transaction where the parties and the *780 subject matter are the same, and where there is clearly a relationship between the documents. Ashland Oil, Inc. v. Donahue, W.Va., 223 S.E.2d 433 (1976); Minear Coal Co. v. Miller Todd Coal Co., 126 W.Va. 151, 27 S.E.2d 428 (1943); U. S. Rubber Reclaiming Co., Inc. v. Seward Wire Co., 111 W.Va. 641, 163 S.E. 52 (1932). We find that the consent for adoption was qualified by the custody agreement which permitted both parties to revoke the change in custody.
For the foregoing reasons, the decision of the lower court is reversed, and the case is remanded for disposition not inconsistent with this opinion.
Reversed and remanded.
NOTES
[1] "Parent, at the request of custodians, has placed in the care, custody and control of custodians, at their home . . . for a probationary period of six (6) months, the child . . who was born February 5th, 1974, and who is under the care, custody and control of parent.

"Custodians agree as follows:
"To receive the child into their home for a trial period of six (6) months.
"To treat the child as a member of their family and to give her proper care, and to love, cherish, nurture, and educate her in a suitable manner, as they would be required to do if she were their own child.
"To notify parent promptly of any change of their address, and in no case leave with or surrender the child to a third party, or remove her from the State of West Virginia for a period of more than thirty (30) days, without the prior written consent of parent.
"Parent shall have, at all reasonable times, access to the child. Custodians shall relinquish and surrender the child, and release all custody of and right to the child, to parent whenever in the honest opinion of parent such relinquishment, surrender, and release is in the best interest of the child.
"Custodians reserve the right to return the child to parent at any time during the probationary period whenever, in the honest opinion of custodians, such return would be in the best interest of the child.
"Custodians shall at the expiration of the probationary period, and within sixty (60) days thereafter, if the child is then in their custody and they agree that such is in the best interest of all parties involved, commence adoption proceedings to effect the legal adoption of the child. Custodians shall pay all costs incident to such proceedings."
[2] Joined as a party plaintiff was the child's natural father, who was divorced from Mrs. McCartney. The trial court did not rule as to his status, and in view of our holding we find it unnecessary to consider the propriety of the trial court's action in this regard.
[3] W.Va.Code, 48-4-la:

"Parental consent or relinquishment of legal custody for adoption purposes, if given prior to the expiration of seventy-two hours after the birth of the child, may be revoked by such parent within ten days after the birth of said child. Except as provided in the preceding sentence and except where a court of competent jurisdiction finds that such consent or relinquishment for adoption was obtained by fraud or duress, no consent or relinquishment of legal custody for adoption of a child, whether given by an adult or a minor, shall be revocable: Provided, that a relinquishment of legal custody for adoption of a child given by a minor parent or parents to a licensed private child welfare agency or to the state department of welfare shall be revocable unless the relinquishment was given in compliance with section one [§ 49-3-1], article three, chapter forty-nine of the Code: Provided, however, that the foregoing proviso shall not be construed as precluding a minor parent or parents from consenting to the adoption of his or her or their child by an individual or individuals."